IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| In re:  LAW OFFICE OF JONATHAN E. FORTMAN, LLC, | ) ) ) | Case No. 4:13mc0042 AGF |
| Movant. | ) ) ) | Hon. Audrey G. Fleissig |

**RESPONSE TO MOTION TO QUASH SUBPOENA AND FOR SANCTIONS**

Respondent, Edelson McGuire, LLC, for its Response to Movant Law Office of Jonathan E. Fortman's Motion to Quash Subpoena and for Sanctions, states as follows:

**INTRODUCTION**

It is an unfortunate occasion in any litigation that necessitates the taking of a deposition of an attorney or employee of a law firm.  Here, both the past and present conduct of Jonathan E. Fortman and his co-counsel necessitated the issuance of the subpoena at the center of this Motion.  On January 14, 2013, Edelson McGuire, LLC, as appointed Class Counsel for Samantha Ellison and a class of similarly situated consumers, issued a subpoena out of this Court, instructing the Custodian of Records for the Law Office of Jonathan E. Fortman ("Movant" or "Fortman") to attend a deposition and produce documents.

The subpoena seeks to discover the following four general categories of documents, all of which are proper under the law of this Circuit and similarly approved by other Courts:

        (1)      Documents related to the filing of the Objection to the current Settlement;

        (2)      Any publicly filed objections in state or federal court made by Fortman to other class action settlements;

        (3)      Any fee sharing arrangements or agreements between Fortman, his co-counsel, and their clients in relation to this Objection or others; and

1

>    (4)   Documents relating to any settlements or payouts Fortman
>          received in return for withdrawing his objection or appeal.

This subpoena was issued after Fortman—who along with his co-counsel have filed over twenty-six (26) objections[1] to class action settlements—filed an objection to the settlement in the underlying action on behalf of an individual who was not a member of the class.  After receiving a copy of the Subpoena, Fortman made clear he would not accept service of the subpoena, was not interested in meeting and conferring to discuss any limitations to the document rider, and unequivocally stated he would move to quash and seek sanctions.  On January 21, 2013, Fortman filed the instant Motion.

Despite Respondent's repeated offers to discuss any issues Fortman had with the Subpoena, Fortman filed his Motion without meeting and conferring in direct violation of both the Local Rules for the Eastern district of Missouri as well as this Court's Requirements governing discovery disputes.  *See* L.R. 3.7-3.04.  Although Fortman reluctantly met and conferred with Respondent at the Court's request after the January 24, 2013 telephonic scheduling conference, he made clear he was only doing so at the Court's insistence and further made clear at the outset of the call that under no circumstances was he going to comply with the Subpoena.[2]  After discussing their various positions, Respondent offered to: (1) withdraw the

---

[1] Respondent was able to identify 26 objections filed by Fortman and his co-counsel over the past five years.  Most of these 26 objections were filed in Federal Court and located using a search of available public documents and do not include additional objections that may not be easily accessible, including objections filed in state court cases.

[2] Prior to filing his Motion to Quash, Movant made no attempt to meet and confer concerning the discovery dispute at hand, even going so far as to refuse Respondent's invitation to set up a telephone call to discuss the possibility of limiting the scope of discovery he found objectionable.  (*See* Declaration of Jay Edelson, ¶ 12, a true and accurate copy of which is attached hereto as Exhibit A.)  Despite Respondent's repeated offers to discuss the terms of the settlement, respond to Movant's specific objections and share information, or even discuss the scope of the subpoena itself, Movant rejected any productive conversations and threatened both a

2

request for a deposition if documents in response to the requests in the Subpoena were produced; (2) limit the requests to not ask for anything that is work product or privileged; and (3) otherwise limit the scope of the requests.  Fortman declined each offer.  (Edelson Decl., ¶ 14.)

In addition to violating the Local Rules or even attempting to negotiate parameters of the Subpoena in good faith, Fortman's Motion fails to acknowledge, let alone meet the burden for demonstrating that the Subpoena was either oppressive or unduly burdensome.  Fortman also fails to discuss the relevant and narrowly tailored nature of the discovery requests, namely documents about his history of filing and settling objections to class action settlements and the financial arrangements among his professional-objector co-counsel and "clients."  Fortman also utterly fails to offer any analysis of how the information sought by the Subpoena is privileged.

For the reasons that follow, Respondent respectfully requests that this Court deny Movant's Motion in its entirety on the merits, or in the alternative, remit this motion to the originating Court where it may be dealt with accordingly.

## FACTS

**I.  The Underlying Class Action Litigation.**

A brief reprisal of the history in the underlying litigation will provide context and explanation of the conduct engaged in by Mr. Fortman and his co-counsel necessitating the instant Subpoena.  The underlying case, *Ellison v. Madden*, Case No. 11-cv-05935 (C.D. Cal), is a class action involving allegations that Defendant Steve Madden Ltd., a footwear and apparel company, sent over 200,000 unauthorized "spam" text messages advertisements to consumers nationwide in violation of the Telephone Consumer Protection Act, 42. U.S.C. § 227.

After conducting discovery, the Parties agreed to mediate the dispute before the Hon.

---

motion to quash and a motion for sanctions against Respondent if she did not withdraw her subpoena immediately.  *Id.*

Edward A. Infante (ret.) and were able to resolve the litigation through a settlement proposed via a "mediator's proposal" by Judge Infante. The settlement benefits the class by providing monetary payments of up to $150 per class member from a $10 million common fund, as well as prospective relief that will eliminate the transmission of future unauthorized text messages from Madden.

The California court granted preliminary approval to the settlement on September 25, 2012, and on the evening of the January 8, 2013 objection deadline,

## II.     Fortman's Objection And History Of Objections.

Fortman, in conjunction with three other professional-objector attorneys, filed a boilerplate objection to the settlement on behalf of two purported class members.

While some objectors genuinely seek to add value to, or improve, a settlement on behalf of the class, others are motivated by purely pecuniary gains. Mr. Fortman, as well as his co-counsel Steve A. Miller, John C. Kress, and Maureen Connors fall into the latter category—these professional objectors have collectively submitted at least 26 meritless boilerplate objections for one purpose: to block the class from obtaining relief by filing an appeal when their objections are inevitably overruled and then extracting a personal payday in exchange for dismissal of the appeal.

Respondent does not use these terms lightly or without basis, as the Court in *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1361 n. 30 (S.D. Fla. 2011), recently described Fortman and other objectors to the settlement as being "motivated by things other than a concern for the welfare of the Settlement Class . . . whose sole purpose is to obtain a fee by

4

objecting to whatever aspects of the Settlement they can latch onto."[3] The chart attached hereto as Exhibit B catalogs the serial nature of Fortman's and his co-counsel's activities. Further, of the 26 objections Respondent was able to locate, there was not a single instance where these professional-objectors have had their objections sustained or where they were recognized or awarded any type of fees for their role in helping improve the settlement.

Aside from Fortman's objection history, his actions surrounding the current objection have given rise to an even more troubling situation. Each member of the Settlement Class in the underlying action is identified on a "class list" by the cell phone number which received the spam text messages. In order to file a claim or an objection, consumers were required to list the cell phone number that received the messages. Fortman filed an objection on behalf of Constance Giratos, the wife of another "client" he has used to recently file a similar meritless objection,[4] and provided a cell phone number affirming she received the offending text

---

[3] The *In re Checking* court even considered taking additional steps to prevent Fortman's eventual appeal and holdup of the settlement, noting "[s]hould these or any other Objectors choose to persist in their objections in order to tie up the execution of this Settlement and further delay payment to the members of the Settlement Class, the Court will consider additional measures to make sure that the members of the Settlement Class are not further harmed as a result." 830 F. Supp. 2d at 1362, n.30.

[4] In *In re: Pre-Filled Propane Tank Mktg. and Sales Prac. Litig.*, No. 09-md-02086-GAF (W.D. Mo.), Fortman represented Patrick Giratos, husband to Objector Constance Giratos here, and objected and then filed a notice of appeal to not one, but two settlements resolved through that litigation. The first objection to the "Amerigas Settlement" ultimately netted Fortman $17,500 through a settlement with the plaintiffs' counsel. (*See Plaintiffs' Reply in Support of Final Approval*, Dkt. 273, at 13.) According to the plaintiffs, Fortman "used the threat of a lengthy delay—and the attendant harm to the class that would entail—to extract $17,500 from class counsel and AmeriGas in exchange for a [sic] dismissing the appeal." *Id.* (*see also* dkts. 188, 225, 238-1, ¶ 7.) Fortman acknowledged that he did receive the alleged settlement amount in return for dismissing the appeal, but did not indicate how or if it was shared between himself and Mr. Giratos. (Dkt. 278, at 2.)

After Fortman voluntarily dismissed his appeal in return for a payoff, the Amerigas portion of the litigation was finally approved. However, Fortman returned once again only a few months

5

messages.  (*See* No. 11-cv-05935 (C.D. Cal), dkt. 53, Jan., 8, 2013.)  After receiving a copy of the objection, Respondent and the neutral third-party administering the Settlement both determined that the number Fortman provided for Giratos was not on the class list.  (Edelson Decl. ¶¶ 4-5; dkt. 55-4 at ¶ 4, Jan. 17, 2013.)  Respondent informed objectors' counsel that the number they stated received the text messages at issue was not on the Class List and asked them to confirm its accuracy.  In response, Fortman's co-counsel wrote: "I apologize for the confusion with the cell phone number.  Here is the correct number: (314) 740-####."  (Edelson Decl. ¶ 7.)  This number was not on the class list either.  (Edelson Decl. ¶ 8; dkt. 55-4 at ¶ 4, Jan. 17, 2013.)

Fortman may claim that the issues with Ms. Giratos were a simple mistake, but that is highly unlikely: prior to filing their objection they confirmed that their other objector, Aileen Connors, was on the class list by calling and asking the Settlement Administrator.[5]

Coupled with the history and reputation of Mr. Fortman and co-counsel as professional objectors, it is clear that the requested discovery is not only relevant to arguments being presented to the district court in California but also necessary to protect the class and its interests in the benefits of the Settlement Fortman is seeking to delay without basis.  Alternatively, if the Court does not see fit to strike Movant's Motion in its entirety, it would be beneficial to all Parties to have the Motion remitted to the originating court so that these issues may be more efficiently resolved by a court intimately familiar with the proceedings.

---

later, objecting on Patrick Giratos's behalf and asserting the same objections in the Ferrellgas Settlement, and eventually appealed again. (*See* docs. 267; 293.)

[5] There are also unusual circumstances surrounding the call seeking to confirm Aileen Connors was a member of the Class.  The individual that called initially provided an incorrect home address and telephone number that did not appear on the Class List.  Only after the Settlement Administrator volunteered the cell phone number did the individual claiming to be Aileen Connors acknowledge it was an "old phone number," and even then had to have the number repeated to her.

# ARGUMENT

I.   **The Subpoena Is Properly Issued And Requests Information Relevant To The Underlying Case.**

The scope of Respondent's Subpoena falls well within the permissible boundaries for discovery established by the Federal Rules, and Fortman has not, and cannot, meet his burden of establishing any legal basis for having the Subpoena quashed.

In asking for information related to Movant's representation of both objector Giratos (who lacked standing to intervene) and objector Connors (whose involvement and relationship with co-counsel Maureen Connors has raised additional issues), Respondent is delving into discovery issues directly relevant to the claims and defenses at issue in the underlying action and the merits of Movant's objection.  Both the Federal Rules and caselaw in this Circuit support the relevance and scope of this Subpoena.[6]

With the exception of a handful of citations to the Missouri Rules of Professional Conduct and arguments grounded in public policy, Movant has provided no precedent in the Eighth or Ninth Circuit explaining why Respondent is not privy to the discovery requested.  In short, Movant has not, and cannot, meet the heavy burden necessary to have the Subpoena quashed.

   A.   **The Subpoena Seeks Documents And Information Directly Relevant To The Court's Assessment Of The Movant's Objection.**

"The scope of permissible discovery, sought by subpoena or otherwise, is ultimately governed by Rule 26(b), which permits the discovery of any non-privileged material 'relevant to the claim or defense of any party,' even if inadmissible, as long as it 'appears reasonably

---

[6] As an initial matter, this Court has jurisdiction over a subpoena compelling attendance at a deposition, as a "deposition subpoena must issue from the court for the district where the deposition is to be taken." Fed. R. Civ. P. 45(a)(2)(B); *CitiMortgage, Inc. v. NL, Inc.*, No. 09CV2104 FRB, 2012 WL 1344994, at *1 (E.D. Mo. Apr. 18, 2012).

7

calculated to lead to the discovery of admissible evidence.'" *In re Cathode Ray Tube (CRT) Antitrust Litig.,* 281 F.R.D. 531, 532-33 (N.D. Cal. 2012) (quoting Fed.R.Civ.P. 26(b)(1)).  For purposes of Rule 26(b)(1), relevance is broadly construed.  *See Med. Protective Co. v. Bubenik,* No. 06CV01639, 2008 WL 1913993, at *2 (E.D. Mo. Apr. 28, 2008) (stating that a subpoena is governed by Rule 26(b)(1) which "permits a party to obtain discovery regarding any matter, that is not privileged, that is relevant to the claim or defense of any party"); *see also Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978).  Relevant information "need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Roberts v. Shawnee Mission Ford, Inc.*, 352 F.3d 358, 361 (8th Cir. 2003).

When assessing the merits of an objection to a class action settlement, courts consider the background and intent of objectors and their counsel, particularly when indicative of a motive other than putting the interest of the class members first.  *See, e.g., In re Checking Account,* 830 F. Supp. 2d at 1361 n. 30 (denying the objection made by Fortman and others and recognizing that the objectors were "motivated by things other than a concern for the welfare of the Settlement Class . . . whose sole purpose is to obtain a fee by objecting to whatever aspects of the Settlement they can latch onto.")

The Federal Judicial Center has even warned courts to "[w]atch out … 'for canned objections filed by professional objectors who seek out class actions to simply extract a fee by lodging generic, unhelpful protests.'" Barbara J. Rothstein & Thomas E. Willging, Federal Judicial Center, *Managing Class Action Litigation: A Pocket Guide for Judges*, at 11 (2005) (quoting *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp 2d 942, 973 (S.D. Tex. 2000)).

Courts are furthered cautioned to be "wary of self-interested professional objectors who often present rote objections to class counsel's fee requests and add little or nothing to the fee

8

proceedings." *Id*. at 24; *see also In re Checking Account*, 830 F. Supp. 2d 1330 at 1361, n.30 ("[P]rofessional objectors can levy what is effectively a tax on class action settlements, a tax that has no benefit to anyone other than to the objectors. Literally nothing is gained from the cost: Settlements are not restructured and the class, on whose benefit the appeal is purportedly raised, gains nothing.")

In this case, inquiring into the nature of the objections, including the relationships between counsel and the objectors and their histories of objecting to class action settlements, will aid Respondent in adequately protecting the interests of the settlement class—something it is required to do under Rule 23—in addition to creating a record from which the court in California may properly evaluate the pending objection. These topics of discovery are particularly relevant in this case, as a sustained objection could mean the denial of final approval, which would affect the rights and recoveries of literally hundreds of thousands of class members. And while certain pleadings are publicly available, this discovery is necessary to understand the background, intent and resolution of Movant's objections in those cases, as well as determine and understand any objections made in any state court cases that are not publicly accessible.

Importantly, during the January 25, 2013 telephonic meet and confer, Fortman specifically conceded the relevancy of the documents and information sought in this Subpoena—admitting that courts do, in fact, consider whether an objector is a "professional objector" and whether the objector and his counsel are improperly extorting class counsel in an effort to leverage a fee. (Edelson Decl., ¶ 14.) While conceding this fact, Fortman suggested only that he disagrees with courts that have considered this information relevant and that information dating back to 2006 is not relevant—an argument that goes to the scope and burden of the Subpoena and not the relevancy of the information sought. (*Id.*)

9

In moving to quash, Movant asserts that Respondent can provide no authority supporting the deposition of an attorney, let alone over these matters. Movant is incorrect. As an initial matter, the Subpoena in the instant case was directed to the "Custodian of Records" of Fortman's law firm and not specifically to Fortman individually. Regardless, courts have permitted subpoenas issued to attorneys, especially in situations like this, where an attorney acts as a professional objector to class action lawsuits.

In *In re Itel Sec. Lit.*, 596 F. Supp. 226, 231-32 (N.D. Cal. 1984), *aff'd,* 791 F.2d 672 (9th Cir. 1986), an attorney worked behind the scenes to undermine a class action settlement in a securities matter. Following final approval and the entry of judgment, an objector filed a notice of appeal at the attorney's behest. *Id.* at 232. Despite objections by the attorney, the court permitted extensive post-judgment proceedings against the objector and the attorney—including discovery and motion practice—reasoning that "'a federal court of equity has jurisdiction [over ancillary matters] ... to secure or preserve the fruits and advantages of a judgment or decree rendered therein.'" *Id.* at 232–233 (quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 239 (1934)).

Moreover, the courts in *Kramer v. Autobytel, Inc.*, No. 10-cv-02722-CW (N.D. Cal., Dkt. 136, Jan. 12, 2012) and *Sullivan v. Kelly Servs., Inc.,* No. CV 08-03893-CW (N.D. Cal. Aug. 10, 2011, Dkt. 121) granted the plaintiffs leave to depose both an objector and his professional objector counsel with nearly identical discovery requests.

In *In re Cathode Ray Tube (CRT) Antitrust Litig.*, plaintiffs sought discovery from an objector to obtain relevant information regarding "(1) his alleged standing as a Settlement Class member to assert objections, (2) the underlying bases for his objection, and (3) his relationship with 'professional' or 'serial' objector counsel that [p]laintiffs' counsel believe instigated his objection to the settlement." 281 F.R.D. at 532. The court found these issues of discovery to be

relevant and permitted the subpoena. *Id.* at 534.

The Subpoena at issue here goes to the heart of the legitimacy of Movant's objection and seeks documents and information that are undoubtedly relevant.

### B. The Subpoena Is Narrowly Tailored And Does Not Constitute An Undue Burden.

Respondent's Subpoena is narrowly tailored, inquiring into the same realm of discoverable information permitted by both the *In re Itel* and *In re Cathode* courts. *See In re Cathode*, 281 F.R.D. at 533 (finding the scope of the subpoena to be reasonably tailored where it "focus[ed] solely on the objector's standing, the bases for his current objections, his role in objecting to this and other class settlements, and his relationships with the counsel that are believed to be behind the scenes manipulating him," including his attorney's "practices with regard to asserting settlement objections").

To the extent that Movant finds the scope of the Subpoena objectionable, Movant has effectively waived any such objection by refusing the good faith overtures by Respondent's counsel to narrow the scope of the Subpoena and/or further minimize any burden on Movant.

In considering the burden on the producing party, "the factors required to be balanced by the trial court in determining the propriety of a subpoena are the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, No. 4:12-MC-00508 JAR, 2012 WL 4856968, at *2 (E.D. Mo. Oct. 12, 2012) (citation omitted). The mere fact a person may be required to attend a deposition is "part-and-parcel" of litigation—without some burden, "the entire civil justice system would come crashing to a halt." *Etten v. U.S. Food Serv., Inc.*, 05-CV-83-LRR, 2006 WL 1390395, at *4 (N.D. Iowa May 19, 2006); *see e.g. In re NCAA*, 2012 WL 4856968, at *4 (rejecting contention that subpoena calling for production of yet-to-be-

11

published academic article and underlying propriety research data caused an undue burden). The mere presence at a deposition is certainly no undue burden, especially where a reasonable time has been afforded beforehand and the deposition is to take place within 100 miles of Movant's office (here the deposition location is no more than 15 miles from Mr. Fortman's office).

Further, the documents sought certainly do not impose an undue burden, as they request records in the possession of Mr. Fortman relating only to his involvement in the cases to which he has lodged objections. *Compare In re Digital Res., LLC,* 246 B.R. 357, 373 (B.A.P. 8th Cir. 2000) (finding undue burden where subpoena called for a "litany of documents" to be produced within 48 hours).

And contrary to Movant's blanket assertion, Respondent is not seeking to compel the production or testimony of matters legitimately protected by either the attorney-client privilege or work product doctrine. That being said, Movant has not come close to meeting his burden in justifying his blanket claim of privilege.

During the January 25th meet and confer, Movant suggested that *every* document sought in the Subpoena was attorney work product. (Edelson Decl., ¶ 14.) In fact, Movant went so far as to state that *any* document that he puts in his "file" automatically constitutes his mental impressions, since it goes to how he conducts cases, and thus becomes attorney work product not subject to production. (*Id.*)

This, of course, constitutes a rather absurd interpretation of the parameters of the attorney work product doctrine and is most certainly not an accurate statement of the law. For example, testimony and documents relating to financial arrangements between Mr. Fortman and his objector-clients do not fall into the category of either attorney-client privilege or work product. *See In re Grand Jury Proceedings Subpoena to Testify to: Wine,* 841 F.2d 230, 234 (8th Cir.

12

1988) ("Absent special circumstances, client identity and fee arrangements are not confidential professional communications protected by the attorney-client privilege.")  Nor do the settlement agreements reached in return for the withdrawal of his objections or appeals in other class action settlements.  *See e.g. Huggins v. Fed. Express Corp.,* 250 F.R.D. 404, 411 (E.D. Mo. 2008); *Argonaut Great Cent. Ins. Co. v. Audrain County Joint Commc'n*, No. 11-CV-00034 AGF, 2013 WL 28246, at *2 (E.D. Mo. Jan. 2, 2013).

Further demonstrating that Movant has failed to meet his burden in seeking to quash the Subpoena is the fact that his Motion fails to provide any factual support for his allegations[7] and even contains several inaccurate statements—displaying either a total neglect for the facts or an attempt to discredit Respondent and mischaracterize her and her counsel's efforts in this case.

First, Movant completely misstates the facts surrounding the service of the Subpoena, attempting to characterize Respondent's counsel as unprofessional and suggesting that the attempt to serve Movant with the Subpoena was inappropriate.  This is baseless and, the truth is far less dramatic than Mr. Fortman would have the Court believe.

On January 14, 2013, Respondent issued this Subpoena to be served at the Law Office of Jonathan E. Fortman, using the address on file with the California court's ECF/Pacer notification service.  Contrary to Fortman's assertion that Respondent never attempted to serve him at his office, a process server did in fact visit Fortman's office with the intent of hand delivering the Subpoena to either him or his Custodian of Records.  (*See* Edelson Decl., ¶¶ 10, 11.)  This attempt was unsuccessful, however, given that Fortman's office is in fact a shared commercial office space that he rents, and no one on hand was eligible to receive service on his behalf.

---

[7] Local Rule 7 – 4.01(a) requires that "[i]f the motion requires consideration of facts not appearing in the record, the party also shall file all documentary evidence relied upon."  Though Movant's Motion is long on allegations, it is absolutely short on any evidence in support, save the initial subpoena and an outdated discovery schedule.

13

(Edelson Decl., ¶ 11.)

Unsuccessful at serving Fortman at his office address, and with no indication of when or even if he might return there, the process server then attempted service at his home. (*Id.*) This was a common sense and reasonable decision made by a professional process server[8]—by no means a decision undertaken to "amplify their attempts to maximize the potential to harass and intimidate." (Mot. at ¶ 7.) Fortman's attempt to cast Respondent's counsel in a negative light is unsupported by the facts, but is unfortunately rather consistent with the tactics and tone he has espoused since first objecting to this Settlement.

Likewise, Movant also misrepresents the state of discovery at this juncture. Citing to a scheduling order issued on November 11, 2011, Movant declared that discovery in this case had closed and that no subpoena could thus issue. (Motion, ¶ 6.e.) However, Movant neglected to review the docket history since the issuance of the original scheduling order and has overlooked the multiple amendments to the litigation schedule. Throughout this litigation, several stays on discovery were granted to allow the Parties to engage in settlement discussions. (*See, e.g.* Dkt. 36, 40.) The schedule cited to by Movant is no longer operable, a fact that could have been ascertained by a simple review of the Court's current docket. In any event, discovery has certainly not closed, and the court has yet to issue any order indicating otherwise.[9]

---

[8] Federal Rule 45 and courts in this Circuit mandate that service of a subpoena on a non-party be made by "ensur[ing] the subpoena is placed in the actual possession or control of the person to be served." Fed. R. Civ. P. 45(b)(1); *Firefighter's Inst. For Racial Equal. Ex rel. Anderson v. City of St. Louis*, 220 F.3d 898, 903 (8th Cir. 2000).

[9] Needless to say, Movant's Motion for Sanctions has absolutely no merit. Courts routinely decline to award sanctions where a subpoena requests potentially protected information, especially where an issuing party "engaged in sufficient good faith efforts to negotiate reasonable parameters on the subpoena." *Mount Hope Church v. Bash Back!*, No. 11-35632, 2012 WL 5907498, at *5 (9th Cir. Nov. 26, 2012) (quoting *Tiberi v. CIGNA Ins. Co.,* 40 F.3d 110, 112 (5th Cir.1994)). Nor would the harsh penalty of the imposition of sanctions be

## II.   Transferring Of The Motion To The Central District Of California Would Delay The Underlying Proceedings.

Courts in the Eighth Circuit are empowered to remit discovery-related motions back to the originating court, but this decision is discretionary and should be limited to situations where the originating Court's familiarity with the facts of the case warrants transfer. *In re Digital Equip. Corp.*, 949 F.2d 228, 231 (8th Cir. 1991); *see also Pactel Pers. Commc'n v. JMB Realty Corp.*, 133 F.R.D. 137, 139 (E.D. Mo. 1990) (granting a motion to transfer, finding that "the issues would best be decided by the [originating] court, which is familiar with the facts of this and the related case, and the posture of the parties").

In addition to having the authority, as well as the factual and legal basis necessary to deny Movant's Motion on the merits, retaining jurisdiction would also serve to greatly expedite the proceedings.  While the California court has a better understanding of the facts relating to the underlying settlement, this Court has an equal understanding of the current litigation and circumstances surrounding Mr. Fortman's objection so that it may rule on the instant Motion.

## CONCLUSION

For the reasons set forth herein, Respondent respectfully requests that this Court deny Movant's Motion to Quash Subpoena and for Sanctions in full, or in the alternative, transfer this Motion back to the originating court in the Central District of California for further proceedings.

---

appropriate simply because a subpoena is eventually deemed unwarranted. *See, e.g., Alberts v. HCA Inc.*, 405 B.R. 498, 502-03 (D.D.C. 2009).  In addition to the Subpoena being wholly proper and seeking relevant information, Respondent's counsel went to great lengths to meet and confer with Movant and to work in good faith with Movant to lessen any burden while permitting Respondent to receive the necessary documents and information. (Edelson Decl., ¶ 12.)  In short, even if any of Movant's arguments are accepted, and even if any aspect of his Motion is granted, the imposition of sanctions would be unnecessary and improper.

Dated: January 28, 2013	Respectfully Submitted,

SAMANTHA ELLISON, individually and on behalf of a class of similarly situated individuals,

/s/ Kevin P. Green
One of Respondent's Attorneys

Thomas Rosenfeld
tom@ghalaw.com
Kevin P. Green
kevin@ghalaw.com
GOLDENBERG HELLER ANTOGNOLI
& ROWLAND, P.C.
2227 South State Route 157
Edwardsville, Illinois 62025
Telephone: (618) 656-5150

Ryan D. Andrews (*Pro Hac Vice to be filed)*
randrews@edelson.com
John C. Ochoa (*Pro Hac Vice to be filed*)
jochoa@edelson.com
EDELSON MCGUIRE LLC
350 North LaSalle, Suite 1300
Chicago, IL 60654
Telephone: (312) 589-6370
Facsimile: (312) 589-6378

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that I caused to be served the above and foregoing *Response to Motion to Quash Subpoena and for Sanctions* to all counsel of record via email and the court's CM/ECF system on this, the 28th day of January, 2013.

/s/ Kevin P. Green